RICHARD CRONIN et al., Respondents, *v.* WILLIAM M. TEBO, Appellant.*

(Argued December 14, 1894; decided January 15, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which affirmed a judgment in favor of plaintiffs entered upon a verdict directed by the court, and also affirmed an order denying a motion for a new trial.

The plaintiffs in this action contracted to build certain bulkheads at Fort Hamilton, the construction of which required an excavation in the ground under water for their reception. The defendant made a written offer to the plaintiffs to do this work, of which the following is a copy :

"BROOKLYN, *June* 13, 1887.

"I, the undersigned, propose and offer to excavate and dredge a trench seven hundred and seventy-five feet in length for crib bottom of thirty feet wide to the depth of twenty feet at mean low water for the sum of twenty-three hundred dollars, the material so dredged to be deposited in-shore so as not to interfere with said trench.

"Respectfully yours,
"W. M. TEBO."

The proposition was accepted verbally, and the defendant was directed to proceed with the work, which he did. He was prevented by the shore inspector from dumping the material in-shore, and carried the same to sea until about the seventh day of July, when he ceased to work and did no more dredging thereafter.

This action is for the recovery of damages alleged to have been sustained by the plaintiffs in consequence of the failure of the defendant to complete his contract, and for service in driving some piles.

Defendant set up as a counterclaim the value of the work he actually did under the contract.

---

* Reported below, 71 Hun, 59.

The counterclaim was based upon the theory that the contract secured to the defendant the right to dump the excavated material in-shore. That it was the duty of the plaintiffs to furnish that place of deposit under the contract, and as they failed to perform that portion of the contract on their part, the defendant was justified in the abandonment of the work, and entitled to compensation for what he had done under the contract.

The following is the opinion in full:

"The defendant's counterclaim, as pleaded, goes upon the ground that it was made one of the terms of the contract that he should be permitted and would be able to dump the dredging material in-shore, and that the plaintiffs broke that contract by not securing for him such permission or authority. There was no express contract to that effect, and if any such existed it was by implication from the nature of the transaction. The defendant offered to do the dredging at a named price, adding, 'the material so dredged to be deposited in-shore, so as not to interfere' with the trench to be made for the cribs of the new bulkhead. The plaintiffs accepted the proposition. They had a contract with the owner to build the new bulkhead, and knew the fact that he needed the material for filling, and was both willing and desirous to have that material so deposited. He never interfered to prevent in-shore dumping. The consent of the owner being assured, no difficulty remained except what might come from the law of the state. Both parties assumed, as was again the fact, that in-shore dumping behind a bulkhead was permissible under that law. There was a bulkhead existing, and it was supposed by the parties that it would afford opportunity for disposing of the material. They were experienced in the business, and, so far as appears, had equal knowledge and equal means of knowledge of the law. But at the first effort the shore inspector stopped the work and prevented the in-shore dumping at the locality selected. At that point it is possible that the defendant might have been justified in abandoning his contract because of a mutual mistake as to the understood possibility of dumping in-shore, or on the ground of an implied contract of the plaintiffs to furnish such oppor-

tunity. But he did not do so, and kept on carrying the material out to sea, which was a more expensive process. What followed is matter in dispute. The plaintiffs say that defendant preferred to dump the material at sea, because he could not get his scows near enough to the shore, and could take away much larger loads with his tug. The defendant says that he waived his right temporarily on the faith of plaintiffs' promise to build the north crib, in which event in-shore dumping could be resumed, and that plaintiffs neglected and refused to build it promptly and for that reason he abandoned the work. We may assume his version as correct. But before he abandoned the dredging the whole difficulty vanished and he knew it. Over two hundred feet of the crib parallel to the shore had been completed. The change was so great that he was not justified in assuming that in-shore dumping would still be prohibited. On the contrary, he saw one Beard, employed by the same owners at the north, dumping dredging material in-shore at the precise point where he had earlier been denied that permission. Cronin, one of the plaintiffs, testified that the defendant knew what Beard was doing, and that his agent, Bentley, complained about it and threatened to quit work unless the process was stopped. Why this complaint was made the case does not show. Bentley, when called for the defendant, said: ' I understood the day before I quit work that Mr. Beard had commenced dumping in-shore. I knew the fact at the time I went and spoke to Mr. Cronin.' It thus appears that before the defendant abandoned his work enough of the cribs had been put in place to permit in-shore dumping without official interference, and the defendant knew it, for it was going on under his own observation. He needed not to be told, for he saw. He had no right to assume that the inspector would refuse to him what he permitted to Beard, and he should have begun, as he could have done, to dump in-shore. His successors, who took up his work where he left it, did so without difficulty or interference, and what they did he could have done, and he was aware of the fact. Indeed, the prohibition by the shore inspector did not rest upon the absence of the north crib. That was never specified by any of the officials. Their action was founded

upon the absence of cribs generally, and the alleged need of the north crib was a bare assumption by the defendant without any foundation in fact. On the contrary, when enough of the outside crib to serve as protection was constructed all complaint ceased. Beard dumped in-shore, and also defendant's successors, and these facts were obvious to him before he abandoned the work. I am unable to see in the proof any justification for his abandonment of the contract.

"The judgment should be affirmed, with costs."

*Josiah T. Marean* for appellant.

*James C. Church* for respondents.

FINCH, J., reads for affirmance.
All concur, except HAIGHT, J., not sitting.
Judgment affirmed.